UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEXANDER VALADEZ,

                    Plaintiff,

        v.                                          Case No. 25-cv-1791-pp

OFC CUSHING, *et al.*,

                    Defendants.

## ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Plaintiff Alexander Valadez, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. On April 6, 2026, the court screened the complaint and ordered the plaintiff to show cause why the court should not dismiss the case on statute of limitation grounds. Dkt. No. 9. The plaintiff timely filed a response to the court's order and clarified that he did not complete exhausting his administrative remedies until December 30, 2022. Dkt. No. 10. The plaintiff filed this case on November 14, 2025. Dkt. No. 1. Under Wis. Stat. §893.23, an incarcerated individual's §1983 claims are tolled while he is exhausting administrative remedies. See Schlemm v. Pizzala, 94 F.4th 688, 689 (7th Cir. 2024). Because the plaintiff filed this case within three years of completing the exhaustion process, it appears that the statute of limitation does not bar the case. The court will review the complaint's allegations and screen the complaint on the merits.

1

## I. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff alleges that on the morning of June 7, 2022, while working in the kitchen at Green Bay Correctional Institution, he became ill and passed out. Dkt. No. 1 at 1. He says that when medical staff came to the kitchen, he was unresponsive. Id. The plaintiff asserts that after medical staff used eight milligrams of Narcan, he began vomiting in a trash can and allegedly was transferred to the emergency room. Id.

The plaintiff states that while he was at the hospital, staff conducted tests and collected a urine sample. Id. Hospital staff allegedly determined that the plaintiff was dehydrated and diagnosed him with hypokalemia. Id. The plaintiff states that the tests showed that he did not have any drugs in his system nor did he have any drugs on his person. Id. Despite this, defendant Daniel Cushing allegedly issued the plaintiff a conduct report falsely stating

3

that he had violated Wisconsin Department of Corrections rules against the use of intoxicants. Id.

The plaintiff states that at his disciplinary hearing on July 11, 2022, defendant Michael Cole found him guilty of the use of intoxicants even though hospital documents confirmed that the plaintiff did not have drugs in his system. Id. at 1-2. For a disposition, Cole imposed 120 days in segregation and suspended the plaintiff's visitation privileges. Id. at 2. At the hearing, the plaintiff allegedly explained to Cole that he did not do drugs and that the hospital had confirmed that he did not have any drugs in his system. Id. The plaintiff says that he called two witnesses who said that he had told them that he was sick. Id.

The plaintiff alleges that he appealed Cole's decision to defendant Warden Dylan Radtke. Id. Radtke allegedly ignored the evidence that proved that the plaintiff was not intoxicated. Id.

The plaintiff states that he submitted an inmate complaint, but that the institution complaint examiner also ignored the evidence proving that the plaintiff did not have drugs in his system. Id. The plaintiff asserts that he appealed that decision. Id. He says that on appeal, both the decision on the plaintiff's conduct report and the decision dismissing the inmate complaint were overturned because the hospital had determined that the plaintiff had low potassium levels, he was diagnosed with hypokalemia and his UA sample and blood tests were negative for the presence of intoxicants. Id. The Office of the Secretary allegedly determined that the conduct report should be expunged. Id.

The plaintiff states that beginning on June 7, 2022, he spent sixty-seven days in segregation based on Cushing's conduct report. Id. He alleges that while in segregation, he could not see his family and he had to shower in his cell. Id. The plaintiff asserts that because he was sent to the hospital, defendants Captain Van Lanen and Dr. Hillary Berg retaliated against him when he returned from the hospital by placing him on suicide watch for no reason. Id. He allegedly never told anyone he was going to hurt himself or that he was feeling suicidal. Id. The plaintiff claims that the defendants violated his constitutional rights. Id. at 3. For relief, the plaintiff seeks compensatory and punitive damages. Id.

C.      Analysis

An incarcerated individual challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) that he has a liberty or property interest that the state has interfered with; and (2) that the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." Lekas v. Briley, 405 F.3d 602, 608 (7th Cir. 2005) (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the

5

Due Process Clause are not triggered. Id. Disciplinary segregation can trigger due process protections. Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When deciding whether an incarcerated person is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98. At one end of the spectrum, "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." Id. at 698 (quoting Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted and incarcerated individuals otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. Id. at 697 (citing Wilkinson v. Austin, 549 U.S. 209, 224 (2005)).

The plaintiff alleges that as a result of the conduct report and disciplinary hearing, he spent sixty-seven days in segregation where he did not have visitation privileges and had to shower in his cell. This relatively short segregation duration does not implicate a liberty interest. See Marion, 559 F.3d

6

at 697. If a liberty interest had been implicated, the court would consider whether the plaintiff had received due process.

The Seventh Circuit recently clarified that that incarcerated individuals "facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." Ealy v. Watson, 109 F.4th 958, 965-66 (7th Cir. 2024). "[A]n inmate who is facing transfer to disciplinary segregation is entitled only to 'informal, nonadversarial due process,' which 'leave[s] substantial discretion and flexibility in the hands of the prison administrators.'" Id. at 966. "[I]nformal due process requires only that an inmate is provided (1) "notice of the reasons for the inmate's placement" in segregation and (2) "an opportunity to present his views—for instance, in a written statement or at a hearing. Id.

The plaintiff alleges that he received a full disciplinary hearing during which he testified and presented witnesses. Based on the plaintiff's allegations, he received more than informal due process. In addition, after challenging his disciplinary disposition through the grievance process, he succeeded in having his conduct report expunged. The plaintiff has not stated a claim for denial of due process.

The plaintiff also claims that Van Lanen and Berg retaliated against him by placing him on suicide watch when he returned from the hospital. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would

7

likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." <u>Perez v. Fenoglio</u>, 792 F.3d 768, 783 (7th Cir. 2015) (quoting <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff alleges that he was placed on suicide watch in retaliation for having to go to the hospital. He does not allege that he engaged in activity protected by the First Amendment. Even if he had, the plaintiff does not say why he believes that his going to the hospital prompted Van Lanen and Berg to place him on suicide watch. The plaintiff has not stated a retaliation claim.

The complaint fails to state a claim for relief. The court will give the plaintiff an opportunity to file an amended complaint regarding the incidents described in the complaint. The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint. <u>See</u> Civil Local Rule 9(b). (E.D. Wis.). The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint.

8

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

## II. Conclusion

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **July 20, 2026**. If the court receives an amended complaint by the end of the day on July 20, 2026, the court will screen it as required by 28 U.S.C. §1915A. If the plaintiff does not either file an amended complaint or a request for more time to file one by the end of the day on July 20, 2026, the court will dismiss the case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

9

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 25th day of June, 2026.

BY THE COURT:

_____

HON. PAMELA PEPPER
Chief United States District Judge